The opinion of the court was delivered by
Watkins, J.
This is an hypothecary action in the ordinary form, for the recognition and enforcement of a legal mortgage, resulting from the registry of an abstract of the inventory of the succession of Simeon Smith, father of the plaintiff, on the 12th of December, 1855, against his mother, Arpher M. Smith, who was duly qualified and confirmed natural tutrix, on certain property of the defendant, as a third possessor.
His averment is that upon a final statement of accounts of the tutrix, a judgment of homologation was rendered, showing a balance in petitioner’s favor of $10,750.85, which bears 5 per cent, per annum interest from the rendition of said judgment — it having, in terms, recognized said mortgage from the date above specified.
After admitting as a credit on said judgment “the amount realized from the succession of Mrs. Arpher M. Smith, deceased (his mother), and the amount received from Homer H. Smith, as.third possessor of property covered by his mortgage,” he claims there isa balance due him of $8050, with 5 per cent, per annum interest from 1st of December, 1881, which is secured by the legal mortgage operating on the defendant’s property.
The defendant urged a plea of discussion, and, in the alternative, certain exceptions, and a plea of prescription, and same having been disposed of, she answered in extenso; and on the trial, *1459 judgment was rendered in favor of the plaintiff, recognizing his legal mortgage, enforcing same against defendant’s property, as to an undivided one-half interest, and reducing plaintiff’s claim to $585.65, with 5 per cent, per annum interest from the 18th of October, 1884. From that judgment both parties have appealed.
In this court the death of the plaintiff has been suggested and the appeal revived in the name of the dative testamentary executrix of the deceased.
The controversies in this litigation are quite analogous, in many respects, to those agitated and decided in Smith vs. Johnson, 35 An. 943, it being a precisely similar' action, with same plaintiff, and the object of which was the enforcement of the same mortgage, against the defendant Johnson, as a third possessor of a portion of the property affected thereby; but, on examination of the opinion in that case, we find but one question decided that is involved in this case, and that is the peremption of the mortgage for want of timely reinscription.
For accuracy of statement we will quote from that opinion, same having been filed in evidence:
“ The plaintiff, E. J. Smith, was born in 1848. His father, Simeon Smith, died in 1853, and, in the same year, his mother, Mrs. Arpher M. Smith, was confirmed natural tutrix. As required by the Constitution of 1868, and legislation thereunder, the minor’s mortgage was recorded by inscription of the abstract of the inventory of the estate of Simeon Smith, on November 9, 1869. At this date plaintiff was of age.
“In 1872 Mrs. Smith filed her account of tutorship to plaintiff, and on December 2, 1872, judgment was rendered homologating her account, giving judgment in favor of the minor against (her as) tutrix, for the sum of $10,734.85, and decreeing that the ‘tacit or legal mortgage of said ward on the property of his said tutrix be and the same is hereby recognized to have effect from the date of her confirmation as such tutrix.’ The judgment was recorded on August 1, 1873, and reinseribed on August 1,1881, and the judgment was itself revived in February, 1881.
“The original inscription of the minor’s mortgage resulting from the recordation of the abstract of inventory in 1869 was never re-inscribed.”
That statement of facts is strictly applicable to the present case, *1460 with the exception of one, which is the reinscription of the abstract of inventory, it appearing from an agreed statement of facts that is appended to the transcript, that such reinseription was made in the book of conventional mortgages in 1881 — a fact not appearing in the Johnson case. And with the further exception that the judgment of homologation now appears to have been duly recorded in book of mortgages on the 17th of December, 1872, instead of on August 1, 1873, as therein stated.
In the brief of the defendant’s counsel “ the substantial defences ” are enumerated, and all others may be considered to have been waived. They may be fairly summarized as follows, viz.:
1. That the judgment homologating the final account of plaintiff’s tutrix awards no interest, and it forms res judicata.
2. That the claim of the plaintiff does not bear interest, because of the usufruct of his mother on the property of the estate of his deceased father, to the extent of the community interest of the deceased.
3. That at the death of plaintiff’s mother — which happened in September, 1879 — his mortgage ranked all others, and that, at the sale of the property of his succession, the whole of the realty inventoried was adjudicated to him at the price of $5850.
4. That, subsequent to this adjudication, when plaintiff threatened his brother, Homer H. Smith, with an hypothecary action against the portion of the mortgaged property he possessed, he received in compromise of said litigation the sum of $5000, and this sum should be credited upon his judgment.
5. That, subsequent to the sale of the property which is herein sought to be rendered, liable to plaintiff’s mortgage, his mother sold (on the 12th of September, 1872) to one H. H. Broad a portion of the mortgaged property for the sum of $3700, and in that act of sale the plaintiff intervened, and waived and renounced his rights of mortgage; therefore, this sum should be credited on his judgment.
6. That in the suit of plaintiff against Johnson, he realized the sum of $4500, in October, 1884, and that sum should be credited on his judgment.
7. That the mortgage in favor of Beverly O. Smith, against plaintiff’s mother as tutrix, is perempted for want of reinscription within the term prescribed by law.
The defendant called in warranty her immediate vendor, Patrick *1461 Byrne, and his vendor, G. G. Walker, and demanded an alternative judgment against the former of $400, and against the latter for $600.
I.
The first question to be determined and disposed of is defendant’s plea of res judicata, which is raised on the judgment homologating the final account of the tutrix. That judgment is couched in the following terms, viz.:
“ It is * * ordered, adjudged and decreed that the said account be homologated and approved in all its parts, and that said Ernest J. Smith do have judgment against and recover from Mrs. Arpher M. Smith, his tutrix, the sum of $10,734.85, and that the costs of these proceedings be borne by said ward.”
This is followed by the paragraph that is quoted from the Johnson case, and the date and signature of the judge follows it.
There is nothing said about interest in the brief statement of accounts which the tutrix furnished to the plaintiff subsequent to his majority. No mention is made of interest in the petition of the tutrix, which accompanied her account when it was filed and homologated.
The contention of defendant’s counsel is, that “ the judgment homologating the final account of a tutor is a final judgment; it fixes the rights of the parties; it is for a specific sum; a ft. fa. can issue thereon; an appeal can be taken from it; and a judicial mortgage results from its proper registry.” Brief, p. 10.
Therefore, he urges that it is controlled by the same rule of interpretation as ordinary money judgments are.
In Succession of Anderson, 33 An. 581, it is stated that “ the only, serious question involved in this case is one of law, viz.: Whether interest can be collected on a judgment for money, which, by its terms, is silent as to interest;” and on a full and careful consideration of all authorities, from Saul vs. His Creditors, 7 N. S. 437, to Succession of Regan, 12 An. 116, we held that “ it was a misfortune which might have been repaired before that judgment became final, but which is now past remedy.”
That case was quite recently quoted with approval, and we said: “ The conclusions of the court rested on, and were completely justified by, several previous adjudications enforcing similar views.” *1462 Insurance Company vs. Harbor Protection Company, 39 An. 585; Schulhoefer vs. City of New Orleans, 40 An. 512.
If the question at issue here is controlled by the jurisprudence applicable to money judgments, the claim of defendant must be maintained.
In Cochran vs. Violet, 37 An. 221, we examined and dealt with the effect of certain judgments homologating annual accounts of tutorship, and held that, under the terms of R. O. O. 356, such judgments are only “ prima facie evidence of the correctness of the accounts homologated,” and said, “ they are judgments which can not serve as a basis for executory process, or for a seizure and sale. * * *
“They are entitled to the same weight, nothing more, nothing less, as a voluntary acknowledgment of indebtedness made by the tutrix, at the time, as the judgment would be, that is obtained by a creditor in a succession in process of liquidation, when the administrator has declined to recognize the claim. * * *
“The prescription which extinguishes money judgments does not apply to such judgments, as have a conditional existence only.”
Not only so, but we held that judgments homologating such accounts did not affect or interrupt the prescription of four years which runs against a minor in favor of the tutor, in respect to the right of action of the former against the latter, “ respecting the acts of the tutorship.”
We said: “ The prescription runs, whether the tutor has or not, , during the minority, rendered an account. His entire omission does not prevent prescription from running. * * *
“ Under the plain letter of the law, O. P. 998, the plaintiff ought to have sued his tutrix for a settlement within the four years from his obtaining his majority.” R. O. O. (356) 362.
We have quoted from that opinion as a leading case for the purpose of showing fully and clearly the distinction which is taken in the code, as well as in jurisprudence, between judgments which homologate annual accounts of tutorships and those homologating final accounts, “ respecting the acts of the tutorship.” And from that distinction necessarily arises the conclusion that the latter class of judgments is final and conclusive as to the tutor and the emancipated minor. And in case the tutor files no final account, and the emancipated minor allows the utile tempus to pass, without resorting to an action to compel one, his rights and claims are effectually *1463 barred. This being the proper construction of the articles of the code relating to the different accounts of tutorship, the conclusion appears to be irresistible that the emancipated minor can assert no claims against his tutor other than such as are recognized in his final account, and established in the judgment homologating it. Such a judgment has the same effect and binding force of any final judgment.
While it is perfectly true “that the sum which appears to be due by the tutor as the balance of his accounts bears interest without judicial demand from the day on which the accounts were closed ” (R. O. O. 360), yet the right to judicially claim interest is unaffected thereby. The use of the plural noun “ accounts” indicates that an extra-judicial settlement was meant, and that the date on which those accounts are stated and closed is the one from which interest commences to run, andmay be recovered, on proper demand and decree.
But we do not mean to extend this doctrine to judgments simply homologating accounts — even final accounts of tutorship — but where, as in this case, the judgment proceeds beyond a simple homologation, and awards a final and specific money judgment, in favor of an emancipated minor, or one who has attained his majority, against his tutrix, it possesses all the characteristics of other money judgments, and constitutes the absolute measure of liability. If it incorrectly disallowed interest, or failed to allow interest, the only remedy was by new trial, or appeal. The defendant’s plea of res judicata was good and should have been sustained.
II.
Our conclusions in reference to the defendant’s plea of res judicata dispenses us from the consideration of the usufruct of plaintiff’s mother, as exonerating his estate from the payment of interest to him, as a beneficiary heir of his father, Simeon Smith, deceased.
III.
The third, fourth and sixth grounds of defence, being germane to each other, may be taken together and considered, as they appertain to payments made on the plaintiff’s judgment.
(a) In reference to the Johnson suit, it is satisfactorily shown that the plaintiff really collected $3500, and that sum must be applied as *1464 credit on his judgment. The judgment’was for the sum of $4500, but during the pendency of a devolutive appeal therefrom, the writ was compromised by the plaintiff accepting $1000 less.
(b) At the probate sale of the property of the succession of Mrs. Arpher M. Smith, the realty was adjudicated to the plaintiff, as purchaser, at the stated price of $5800; one-third in cash and the remainder in one and two years’ time. Subsequently, the plaintiff threatened to proceed against his brother, Homer H. Smith — who was at the time administrator of their mother’s succession — in the enforcement of his legal mortgage on property in his possession, when a transaction and compromise took place between them, whereby the latter assigned to the former the judgment against the tutrix, in favor of his brother, Beverly C. Smith, for exactly the same amount as that of the plaintiff against her; and of which he, Homer H. Smith, was holder, as collateral security for an indebtedness of Beverly C. Smith to him.
In the same transaction, Homer H. Smith agreed to pay, and the plaintiff to receive, the sum of $5000 in full acquittance of his demands, and therefor to release his mortgage on the property of the former.
This consideration was paid to the plaintiff by surrendering to him the two notes which he had theretofore executed in favor of Homer H. Smith, administrator of Mrs. Arpher M. Smith’s succession. The written agreement between the parties states that the judgment of Beverly O. Smith was transferred “ subject to certain credits thereon,” and that the price of $5000, therein stipulated as the consideration that Homer H. Smith was to pay for the release of plaintiff’s mortgage on his property, was “ credited as payments on the above described judgments pro rata, in the proportion that the respective amounts' of said judgments bear to the said sum paid.” Now, it appears from the record, that, on the date on which judgment was rendered in favor of Beverly O. Smith, he was paid by his mother the sum of $5996, thus leaving a balance of $4738.55 due him on his judgment of $10,734.55.
But while this agreement was predicated on the basis of $5000, as the whole price Homer H. Smith was to pay for the release of the plaintiff’s mortgage, yet it is the price of adjudication to the plaintiff of his mother’s succession property, which is the measure of his obligation.
*1465 It is manifest that both the $5000 which is stipulated in the agreement, and the $5800, amount of adjudication, can not be allowed as credits on the plaintiff’s judgment.
The former was paid and compensated in the settlement of the latter. '
Now it appears from the transcript that the Beverly C. Smith’s judgment was recorded on the 15th of July, 1873, and never subsequently reinscribed. It is against this legal mortgage that the defendant’s plea of peremption is urged. Beverly Smith was of full age in 1872, when he obtained judgment against his tutrix, and, therefore, it was necessary that his mortgage should have been properly reinscribed within ten years from July 15, 1873. Lemille vs. Thompson, 34 An. 1041; Smith vs. Johnson, 34 An. 943.
It was in full force in 1881, when the transaction betweeñ the plaintiff and H. H. Smith occurred, though it has since become perempted.
But the judgment of plaintiff was recorded prior to that of Beverly Smith, and was, therefore, superior in rank, and entitled to preference and priority in receiving payment from the proceeds of the common debtor’s property; and to it the $5800 should have been applied. Homer H. Smith and the plaintiff could not, by their agreement, otherwise impute those proceeds to the prejudice of the defendant as third possessor.
IV.
Defendant contends that, inasmuch as the plaintiff intervened in an act of sale, made by the tutrix ’on the 12th of September, 1872, of a part of the mortgaged property, and waived and gratuitously renounced his rights of mortgage therein, the price of $3700 must be credited on his judgment.
But plaintiff’s counsel replies that “it is quite certain that there is no credit in favor of the original debtor. Can there be any credit in favor of a third possessor? Can there be one claim against the original debtor and another against the third possessor?” Brief, p. 9.
The identical question raised here was decided adversely to the defendant’s contention, in Powell vs. Hayes, 31 An. 789; although in that case a special mortgage was under consideration, against the enforcement of which discussion is not allowed. In that case the court said:
*1466 “Now, the third possessor of mortgaged property is not privy to the contract between the creditor and the original mortgagor. He is not bound for the debt. The creditor has never consented to take him as surety. Without the consent of the creditor no one can become surety of the debtor in a conventional obligation. * * There being no privity between the mortgage creditor and the third possessor, he is under no obligation to preserve his privileges and mortgage against others in order that the third possessor may have subrogation thereto in their entirety. It may be that the third possessor, having an interest in discharging the debt, will, upon payment thereof, be entitled to subrogation to the then existing rights of the mortgage creditor.”
Article 715 of the Code of Practice provides that the creditor With a general mortgage must proceed against the holder of property subject thereto who has most recently acquired, and, in the inverse order of alienation, to the one who acquired most anciently.
Of course, the rights of all purchasers of parts of the mortgaged property are fixed by their respective acts of conveyance. The one who first acquires a portion could not anticipate that another would purchase a part of the mortgaged property. Certainly there is not and could not be any privity between purchasers at different dates. The one making the first purchase of a part leaves it in the power of another to acquire the remainder; and the one who makes the last purchase buys with full knowledge. Each of these dealings are separate and distinct one from the other.
What reason is there why the legal mortgagee can not intervene in the subsequent act, and renounce his right of mortgage without consideration, and not subject himself to the penalty of having to credit his mortgage debt with the amount of the sale, at the instance of antecedent purchaser? What duty or obligation does the mortgagee owe to the antecedent purchaser who buys without his consent or knowledge? There is none that we can conceive of. The reasoning of the court in Powell vs. Hayes seems to be strictly applicable to a legal mortgage. The only difference which can exist between the legal and conventional mortgage in this respect relates to the plea of discussion; and of which the antecedent purchaser is deprived by the mortgagee’s remuneration.
But in this connection it must be observed that under the terms of the Oivil Oode the plea of discussion of the third possessor is *1467 limited to “property mortgaged for the same debt, within the possession of the principal debtor.” Article 3403.
It is the provisions of the Code of Practice alone which extend the right of discussion to junior possessors of mortgaged property.
From the fact that the Code of Practice requires of the hypothe- . cary defendant to advance the cost of discussion, it is clear that only a grace is extended to him as a senior possessor, and not an obligation imposed on the mortgage creditor.
But the mortgagee’s renunciation caused the defendant no injury, because the 3410th article of the Revised Civil Code declares that “ the third possessor, who has either discharged the mortgaged debt or relinquished the property mortgaged, or suffered it to be sold under execution, has, according to law, an action in warranty against the principal debtor.'” (Italics ours.)
So if the purchaser — any purchaser — be ousted by reason of the mortgages resting on the property at time of sale, his recourse is against his vendor and warrantor for reimbursement, and not against the mortgagee, with whom he had nor has any contractual or even quasi' contractual relations. And what gives force and significance to the quoted article in this connection is the fact that it is found in the chapter of the title appertaining to mortgages, which treats “ of the effect of mortgages against third possessors and of the hypothecary action.”
We are of opinion that this part of the defendant’s demand is not well grounded and must be rejected.
V.
Deducting from the capital of plaintiff’s judgment the sums allowed as credits thereon, and we have this statement, viz.:
To amount of plaintiff’s judgment.................................................................$10,734 55
Or.
By amount collected on Jolmson judgment under compromise.....$3,500 00
Ry amount proceeds of sale of real estate of Mrs. Smith’s succession to the plaintiff......................................................................$5,800 00 — $9,300 00
Balance due on judgment............................................................. $1,484 55
For this sum the plaintiff is entitled to judgment, and to this amount the judgment must be amended and increased.
It is therefore oidered, adjudged and decreed that the judgment of the lower court be so amended and increased as to award to the plaintiff and appellant the sum of $1484.55, and that all costs be *1468 deducted from the proceeds of the sale of the hypothecated property.
It is further adjudged and decreed that the judgment appealed from be, in all other respects, affirmed.